# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CALIFORNIA AIR RESOURCES BOARD, | No. 1:17-CV-1698 |
| Appellant | (Judge Brann)[1] |
| v. | |
| LA PALOMA GENERATING COMPANY, LLC, | |
| Appellee/Debtor | |
| LNV CORPORATION, | |
| Appellee | |
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS, | |
| Appellee. | |

**MEMORANDUM OPINION**

**JULY 31, 2018**

## I. BACKGROUND

Appellant California Air Resources Board ("CARB") filed an appeal[2] of the decision of the District of Delaware's Bankruptcy Court to this Court on

---

[1] An Article III Judge in the Middle District of Pennsylvania sitting by designation in the District of Delaware in lieu of the vacant judgeship in that district.

[2] Although CARB did not docket its statement of issues on appeal in the above captioned appeal, a review of the docket in the United States Bankruptcy Court's docket reveals its statement of issues on appeal. These are:

November 22, 2017.³ Appellee/Debtor, La Paloma Generating Company, LLC ("La Paloma"), owns a natural gas fired electricity generation facility in the state of California,⁴ which releases greenhouse gases into the atmosphere. Under the California statutory framework,⁵ La Paloma, as part of a cap and trade program, was required to acquire an estimated $63 million dollars' worth of compliance instruments on the open market in order to satisfy its state emission surrender obligations.⁶ LNV had been a secured lender to La Paloma, whose debts to LNV totaled over $300 million dollars in credit secured by substantially all of LNV's assets, including the facility referenced herein.⁷

Because a dispute arose over La Paloma's $63 million dollars worth of compliance instrument liability, it also received two offers from third parties to

---

1. Did the Bankruptcy Court err when it held that a California court would rule that the California Cap on Greenhouse Gas Emissions and Market-Based Compliance Mechanisms Regulation, 17 California Code of Regulations ("C.C.R."), §§ 95801 et. seq. ("Cap-and-Trade Regulation") unambiguously provides that a purchaser of a natural gas power generation facility has no obligation to surrender cap-and-trade compliance instruments on account of pre-transfer greenhouse gas emissions?
2. Did the Bankruptcy Court err in holding that the obligation to surrender compliance instruments under the Cap-and-Trade Regulation on account of pre-transfer greenhouse gas emissions is an "interest" under 11 U.S.C. § 363(f)?

United States Bankruptcy Court for the District of Delaware Docket Number 16-12700 (CSS) ECF No. 942.

³ ECF No. 1.
⁴ ECF No. 1-1 at 3.
⁵ California Global Warming Solutions Act of 2006, Health and Safety Code, §§ 38500 *et seq*.
⁶ ECF No. 1-1 at 3-5.
⁷ Br. of LNV, ECF No. 7 at 6.

- 2 -

purchase the electricity generation facility, one for $25 million and one for $75 million. Both offers were conditioned on a determination by the Bankruptcy Court that the purchaser would not be liable for the $63 million dollars in Debtor Emission Surrender Obligations.[8]

In the end, LNV purchased all of La Paloma's assets, as La Paloma's secured creditor, through a $150 million dollar credit bid, i.e., a reduction in the amount of LNV's secured claim.[9] "At LNV's insistence, so that it would have certainty upon the closing of the contemplated transaction, LNV and CARB agreed to submit their dispute regarding the Debtor Emisison Surrender Obligations to the Bankruptcy Court…"[10]

La Paloma subsequently filed a petition for a voluntary reorganization under Chapter 11 of the Bankruptcy Code. A plan was submitted for Bankruptcy Court approval to permit LNV Corporation ("LNV") to assume substantially all of La Paloma's assets.[11] As relevant here, La Paloma, LNV, and CARB all presented the issue of whether the transfer of assets, including the electricity generation facility, could be transacted free and clear of any obligations to surrender compliance

---

[8] *Id*. at 7.

[9] *Id.*

[10] *Id.*

[11] ECF No. 1-1 at 6.

instruments under the California Cap-and-Trade Program.[12]  In a thorough and well-reasoned opinion, the Bankruptcy Judge reviewed the relevant California statutes and determined that LNV did not assume successor liability for the Debtor Emission Surrender Obligations prior to its acquisition of the Debtor's assets, and, resultantly, confirmed the plan.[13]

CARB then appealed to this Court.  On January 19, 2018, LNV filed a motion to dismiss the appeal, arguing that it is moot pursuant to Section 363(m) of the United States Bankruptcy Code.  Having reviewed the parties' submissions and the relevant statutory and case law, LNV's motion will be granted, and the case dismissed.[14]

## II. DISCUSSION

### A. Standard of Review

A District Court sits as an appellate tribunal when presented with an appeal from a final order of a United States Bankruptcy Court.[15]  This Court's standard of review is to "review factual findings for clear error, and [] exercise plenary review over legal determinations."[16]  "We review basic and inferred facts under the clearly

---

[12] ECF No. 1-1 at 6.

[13] ECF No. 1-1 at 6-21.

[14] The Official Committee of Unsecured Creditors of La Paloma Generating Company, LLC, as intervenor, agreed with the position taken by LNV.

[15] *See* 28 U.S.C.A. § 158, Fed. R. Bankr. P. 8001(a).

[16] *In re Udell*, 454 F.3d 180, 183 (3d Cir. 2006).

erroneous standard."[17]  "We exercise plenary review over legal issues."[18]  "In reviewing ultimate facts, which are a 'mixture of fact and legal precept', we must 'break down' the questions of law and fact and "apply the appropriate standard to each component."[19]

> **B. 11 U.S.C. § 363(m) compels the conclusion that the appeal is moot.**

The text of 11 U.S.C. § 363(m) reads as follows:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

"We have referred to section 363(m) as a 'statutory mootness' provision."[20]  "In construing section 363(m), we have rejected a per se rule 'mooting appeals absent a stay of the sale or lease at issue,' and instead require that two conditions be met before an appeal becomes moot under section 363(m): (1) the underlying sale or lease must not have been stayed pending appeal, and (2) reversing or modifying the authorization to sell or lease would affect the validity of the sale or lease."[21]

---

[17]  *In re Fegeley*, 118 F.3d 979, 982 (3d Cir. 1997) (all internal citations omitted).

[18]  *Id.*

[19]  *Id.* (internal citations omitted).

[20]  *In re Rickel Home Centers, Inc.*, 209 F.3d 291, 298 (3d Cir. 2000) (Sloviter, J.).

[21]  *Id. (internal citations omitted).*

The holding by United States Court of Appeals for the Third Circuit in *In re Rickel Home Centers, Inc.* has been expounded on as such: "[t]o promote certainty and finality with respect to these sales and encourage parties to bid for assets, § 363(m) 'prohibits the reversal of a sale to a good faith purchaser of bankruptcy estate property ... if a party fails to obtain a stay of the sale.'"[22] "Our Court of Appeals rejects the per se rule of other Circuits where every appeal not accompanied by a stay is moot."[23] "Instead, our Court of Appeals interprets § 363(m) to require "two conditions must be satisfied before an appeal may be dismissed as moot ...: (1) the sale was not stayed pending appeal, and (2) reversal or modification of the Bankruptcy Court's authorization would affect the validity of the sale.""[24]

In the matter at hand, the parties dispute whether or not CARB sought a stay of the sale order prior to the appeal. CARB filed its notice of appeal on November 20, 2017.[25] The next day it moved to stay pending appeal.[26] United States Bankruptcy Judge Christopher S. Sontchi held a hearing on the issue on January 9,

---

[22] *Matter of Metro. Steel Indus., Inc.*, No. CV 16-5392, 2017 WL 126120, at *2 (E.D. Pa. Jan. 12, 2017) (all internal citations omitted) (Kearney, J).

[23] *Id*.

[24] *Id.*

[25] United States Bankruptcy Court for the District of Delaware Docket Number 16-12700 (CSS) ECF No. 898.

[26] *Id.* at ECF No. 900.

2018.²⁷ Judge Sontchi denied the motion the same day.²⁸ Although CARB attempted to stay the sale, this request was denied. However, in the Third Circuit District Courts do not cease analysis based solely on a denial of a stay.

Consequently, I turn to the second step of the Third Circuit's two-part test. I find that reversal or modification of the Bankruptcy Court's authorization to sell the La Paloma electricity generation facility without the encumbrance of its surrender obligations of would affect the validity of the sale of the facility. "In short, the validity prong of our test provides a narrow exception that may lie for challenges to the Sale Order that are so divorced from the overall transaction that the challenged provision would have affected none of the considerations on which the purchaser relied."²⁹

Two cases are illustrative of this principle. The Third Circuit has found that when the office supply behemoth, Staples, assumed a lease pursuant to a court order under Section 363 of the Bankruptcy Code, possession and expenditure of substantial funds to renovate and redesign the property, was sufficient to satisfy the criteria that "revocation of the authorization would adversely affect the validity of the assignment."³⁰ Additionally, the Eastern District of Pennsylvania found that in

---

²⁷ *Id.* at ECF No. 999.

²⁸ *Id.* at ECF No. 1000.

²⁹ *In re Pursuit Capital Mgmt., LLC*, 874 F.3d 124, 139 (3d Cir. 2017) (Jordan, J.).

³⁰ *In re Rickel Home Centers, Inc.* at 305.

the sale of a steel manufacturer's assets pursuant to 11 U.S.C. § 363, the "specifically bargained for right not be bound by contracts…and for protection against successor liability claims" affected the validity of the sale.[31]

Here, I conclude that a $63 million dollar liability on what was essentially a $150 million dollar bid, substantially devalues the purchased assets. The Third Circuit has explained that "a challenge to an authorized transaction will necessarily impact that transaction's validity if it seeks to affect 'the validity of a central element,' such as the sale price."[32] Because both third party offers were conditioned on the Bankruptcy Court finding no successor liability, it is clear that a reversal at this stage of the proceedings would explicitly impact the settled transaction's validity. The $150 million dollar reduction in LNV's secured claim would likely have been further reduced, and substantially so, by the imposition of $63 million dollars of compliance instruments.[33] LNV intentionally agreed with CARB to have the issue of the Debtor Emission Surrender Obligations submitted to the Bankruptcy Court to ensure the protections that 11 U.S.C. § 363(m) is designed to effectuate, specifically "to promote certainty and finality with respect to these sales and encourage parties to bid for assets."[34] After all, Section 363(m)

---

[31] *In re: Matter of Metropolitan Steel Industries, Inc.*, at *3.

[32] *In re Alabama Aircraft Indus., Inc.*, 514 F. App'x 193, 195 (3d Cir. 2013) *citing Pittsburgh Food & Beverage v. Ranallo*, 112 F.3d 645, 649 (3d Cir.1997).

[33] *See* Declaration of James Erwin, Senior Officer at LNV.

[34] *In re Rickel Home Centers, Inc*., 209 F.3d at 298.

provides "not only ... finality to the judgment of the bankruptcy court, but particularly ... finality to those orders and judgments upon which third parties rely… its certainty attracts investors and helps effectuate debtor rehabilitation."[35]

CARB cites to a case which is seemingly beneficial to its argument. The reason it is seemingly beneficial to CARB is because the Third Circuit determined that the issue was not mooted by Section 363(m), and continued to address the issue on its merits. However, that court nevertheless affirmed the decisions of the Bankruptcy Court and the District Court, albeit on a different bases than the lower courts. The Third Circuit explained that "while § 363(m) aims to make sales of estate property final and inject predictability into the sale process, we don't think it does so at all costs and certainly not for non-purchasers."[36]

The instant matter is distinguishable. First, having reviewed the Bankruptcy Judge's decision interpreting whether or not LNV would have successor liability under California's statutory framework, I would affirm that substantive opinion. Judge Sontchi correctly decided the issue based on the plain language of California's statute, rather than on CARB's recommended, self-serving interpretation of the legislative intent of the emissions statute. Second, in CARB's unpersuasive case citation, there was an escrow fund in place from the purchaser,

---

[35] *In re Pursuit Capital Mgmt.*, LLC, 874 F.3d 124, 133 (3d Cir. 2017) (Jordan, J.).

[36] *In re ICL Holding Co., Inc.*, 802 F.3d 547, 554 (3d Cir. 2015).

to which the Government was appealing in order to obtain it's asserted slice of the pie. Thus, there was no effect on either the sale itself or the sale price of the property. The only issue was which of the creditors were entitled to a portion of that escrow account.

In the case at bar, there is no such escrow account at issue. CARB's asserted slice of the pie would have greatly affected the sales price LNV would have been willing to negotiate to obtain the property had Judge Sontchi decided LNV was responsible for successor liability for emissions from the facility. CARB's citation is, on its face, on-point. However, a thorough review of that case and its comparison to the instant matter belies that more superficial analysis.

## III. CONCLUSION

For the foregoing reasons, the motion to dismiss the appeal as moot will be granted by separate Order and the appeal of the November 9, 2017 Order of the United States Bankruptcy Court for the District of Delaware dismissed.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge